UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DARREL LEON RAYFORD,

    Plaintiff,

v.                                Case No. 3:25cv627-LC-HTC

CENTURION OF FLORIDA LLC, et al.,

    Defendants.
_____/

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Darrel Leon Rayford, a prisoner proceeding *pro se* and *in forma pauperis*, alleges Defendant Centurion of Florida LLC ("Centurion") violated the Eighth Amendment by displaying deliberate indifference to a right knee injury he suffered while incarcerated. Doc. 15. Centurion has filed a motion to dismiss (Doc. 29) and Rayford responded in opposition (Doc. 45). After reviewing the parties' submissions and the relevant law, the undersigned concludes the motion should be GRANTED because: (1) Rayford failed to exhaust his administrative remedies regarding his claim against Centurion; and (2) his factual allegations do not support a deliberate indifference claim against Centurion.

## I.    Background

Rayford sues Centurion, a contractor that provides medical care to inmates in the Florida Department of Corrections ("FDOC"), and three of its employees, Dr. E.

Hernandez-Perez, Nurse Kelley Coone, and Nurse Melanie Carter.   The second amended complaint (Doc. 15) sets forth the following factual allegations, which are accepted as true for purposes of this Report and Recommendation.

In May 2023, Rayford injured his right knee while playing basketball at Okaloosa Correctional Institution ("Okaloosa CI").  He heard "a pop sound" in the knee, felt "excruciating pain," and was unable to stand with all his weight on the knee.  Security staff immediately escorted Rayford to the medical department for an examination.

Nurse Coone asked Rayford to try to walk; Coone observed Rayford's knee was "extremely swollen" and, based on his behavior and facial expression, saw that he was in "a tremendous amount of pain."  Coone ordered x-rays, which were taken the same day as the injury.  Coone told Rayford she could find nothing abnormal on the x-rays and an MRI would need to be conducted.  About a month after the injury, Coone and Dr. Hernandez-Perez provided Rayford with crutches.

In August 2023, Rayford was transferred to the Reception and Medical Center ("RMC"), where medical staff informed him that Coone had scheduled him to receive "progressive rehabilitative and physical exercise therapy."  Over a span of three months, Rayford was forced, under threat of disciplinary action, to complete twelve sessions of "rigorous and painful multi-training exercises."  He could not properly complete the exercises due to pain and because "the tendons which connect

his quadriceps muscle to his kneecap was clearly disconnected." Rayford maintains the physical therapy sessions increased his pain and "only made his injury worse."

In December 2023, Rayford was transferred back to Okaloosa CI in more pain than when he suffered the knee injury in May 2023; the chronic pain interfered with his sleep. In March 2024, Nurse Coone prescribed him 500 mg naproxen pills "for the first time for his chronic knee pain" but he "was told to take only half to save them money." At various sick call visits, Rayford complained to Coone that the naproxen did nothing to dull his chronic knee pain. Coone refused to prescribe another, stronger pain medicine "that would work despite having access to stronger medicine." In April 2024, Coone and Dr. Hernandez-Perez provided Rayford a "non-hinged type knee brace."

Sometime after December 2023, Dr. Hernandez-Perez conducted an independent examination of Rayford's knee and reviewed the x-rays that Coone had ordered in May 2023. Hernandez-Perez explained to Rayford that the lateral collateral ligament ("LCL") in his right knee "was completely torn." Rayford showed Hernandez-Perez his right knee; he pointed to the top of his kneecap and pressed his finger down, "evidencing no connective tissue present." Rayford then showed Hernandez-Perez his left knee for comparison, "where the other was obviously connected."

Hernandez-Perez nodded his head in agreement and explained that an LCL tear is a common injury among athletes that causes pain and other symptoms. Rayford asked whether minor LCL tears "usually heal after 3-12 weeks … with general management and treatment involving the use of ice packs, crutches, and … a hinged knee brace." Hernandez-Perez said "yes."

Rayford looked at both his legs side by side and told Hernandez-Perez the quad muscle in his right leg had "shrunk a lot." Hernandez-Perez nodded in agreement and explained that it appeared "major surgery … probably would be required to fix it and for [Rayford] to gain full use of his leg," but "he couldn't say for sure without the results of an MRI or ultrasound scan to determine the full extent of the injury."

Rayford immediately requested that those diagnostic tests be performed and that he be prescribed a stronger pain medication to address the constant aching and numbness in his leg. Rayford also indicated that when he walked, he felt like his leg had "no balance, like it's going to collapse on the injured side." Hernandez-Perez refused to prescribe different medication or order an MRI, saying "it's not in the best interests of company costs for stronger pain medicines or an MRI scan."

On October 4, 2024, Hernandez-Perez told Rayford he was going to prescribe a different treatment—therapeutic soles for his shoes and four 10-mg steroid pills a day to help with his knee pain and minimize the swelling. Rayford asked about

surgery but Hernandez-Perez said "We gonna do one step at a time." When Rayford asked about an MRI, Hernandez-Perez replied, "they not gonna pay the money for an MRI." Rayford told Hernandez-Perez that Coone said she "put him in for an MRI scan." Hernandez-Perez said, "you're like the 20th person she told that she was gonna do something for and was lying." Rayford asserts the steroid pills did "nothing to dull [his] knee pain or help his knee heal itself properly."

Between March 2024 and September 2024, Rayford filed multiple grievances complaining about the adequacy of his treatment and requesting diagnostic imaging, surgery, and to see a specialist. Some of these grievances were reviewed and responded to by Dr. Hernandez-Perez and Nurse Carter. The responses denied Rayford's grievances and informed him that medical personnel were responsible for determining his treatment regimen.

In February 2025, Rayford was transferred back to the RMC for an MRI "due to multiple sick calls without relief from pain and reduced function of knee." The MRI was taken in March 2025, and Dr. Owens diagnosed Rayford as having a problem with his meniscus and ordered surgery. The surgery on Rayford's knee was performed on July 11, 2025.

Based on the foregoing, Rayford alleges the Defendants violated the Eighth Amendment by exhibiting deliberate indifference to his right knee injury. As relief, he seeks compensatory and punitive damages, as well as injunctive relief.

## II.   Failure to Exhaust

Centurion argues Rayford's claim against it should be dismissed because he failed to exhaust his administrative remedies before filing this action. After reviewing the parties' arguments and Rayford's grievances, the undersigned concludes Rayford did not exhaust his deliberate indifference claim against Centurion because he never filed a grievance asserting his inadequate treatment was due to a custom or policy.

### A.   Legal Standard

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory precondition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The requirement is not subject to waiver by a court, or futility or inadequacy exceptions. *See Booth*, 532 U.S. at 741 n.6; *see also Johnson v. Meadows*, 418 F.3d 1152, 1155 (11th Cir. 2005) (The PLRA "entirely eliminates judicial discretion and

instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'") (citation omitted).  Moreover, the PLRA requires "proper exhaustion" so that the agency has an opportunity to address the issues on the merits.  *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006).

An exhaustion defense under the PLRA is treated as a matter in abatement, which means procedurally the defense is treated like one for lack of jurisdiction, although it is not a jurisdictional matter.  *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quotation marks and citations omitted).  "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process."  *Id.*  "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."  *Id.* (citing *Bryant v. Rich*, 530 F.3d 1368, 1373-74 (11th Cir. 2008)).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  *Id.* (citing *Bryant*, 530 F.3d at 1373-74, 1376).  "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies."  *Id.* at 1083.  "The

defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. at 1082 (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

The grievance procedures promulgated by the FDOC generally require an inmate to complete three steps. First, the inmate must file an informal grievance with a designated prison staff member. Second, the inmate must file a formal grievance with the warden's office. Third, the inmate must submit an appeal to the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). Medical grievances, however, may start with a formal grievance and bypass the informal grievance step. *See* Fla. Admin. Code r. 33-103.006(3)(e).

### B.    Rayford's Grievances

Rayford provided the Court with two sets of grievances that are relevant to the exhaustion analysis.[1] First, on February 23, 2024, Rayford filed a formal grievance complaining he was subjected to "deliberate indifference and medical negligence" by Coone based on her physical therapy referral and her initial assessment of his knee injury, including her failure to see the torn ligaments on the same x-ray that Dr. Hernandez-Perez later reviewed. Doc. 45-1 at 6. Dr. Hernandez-

---

[1] The parties submitted additional grievances, but the two sets discussed herein are the only ones provided to the Court that include an appeal to the Secretary that was responded to on the merits.

Case No. 3:25cv627-LC-HTC

Perez denied that formal grievance on March 12, 2024, stating "it is the responsibility of your Chief Health Officer to determine the appropriate treatment regimen for the condition you are experiencing" and "you have received adequate medical care." Doc. 45-1 at 5. Rayford appealed the denied of the formal grievance to the Secretary on March 19, 2024, asserting Hernandez-Perez's response failed to address the substance of his complaints. Doc. 45-1 at 9. The Secretary's office denied Rayford's appeal on April 16, 2024, reiterating that medical personnel were responsible for determining his treatment regimen, stating Hernandez-Perez's response was appropriate, and noting Rayford received a knee brace on April 4, 2024. Doc. 45-1 at 8.

Second, on July 2, 2024, Rayford filed a formal grievance complaining that he had repeatedly put in sick call requests regarding his knee injury, but medical staff lied about providing him an MRI and kept giving him "the run around" about getting his knee fixed. Doc. 45-1 at 12. He added that he had been in pain and telling medical staff about his knee issue for 14 months, but "nothing [was] getting done." *Id.* Dr. Hernandez-Perez denied the formal grievance on August 15, 2024, advising Rayford that: (1) specialty consults are ordered by the Chief Health Officer; (2) his request for an MRI was sent to the Regional Medical Director ("RMD") for review; and (3) after reviewing his medical record, the RMD decided he would continue to use a knee brace for three months and then be reevaluated. Doc. 45-1 at 11. Rayford

appealed the denial of the formal grievance on August 25, 2024, asserting Hernandez-Perez's response failed to address the concerns he raised, accusing medical staff of deliberate indifference, and complaining that he had not received an MRI and his knee was still causing him pain. Doc. 45-1 at 15. On October 4, 2024, the Secretary's office denied the appeal, stating Hernandez-Perez's response appropriately addressed the issues Rayford presented. Doc. 45-1 at 14.

## C.    Discussion

The two sets of grievances described above were not sufficient to exhaust Rayford's deliberate indifference claim against Centurion. While the grievances complained about the treatment Rayford was receiving for his knee injury, nothing in those grievances put prison officials on notice that Rayford believed the inadequate treatment was due to a custom or policy of Centurion. The grievances did not mention Centurion, a custom or policy, or the statements Coone and Hernandez-Perez allegedly made about the cost of Rayford's treatment. In other words, nothing in the grievances alerted officials to Rayford's claim that his inadequate treatment was due to Centurion's unwillingness to spend money, as opposed to the judgment of medical personnel. *See* Doc. 45-1 at 9 (complaining medical staff caused him further injury "by failing to have and use the knowledge, skill and care ordinarily possess and employed by members of the profession in good standing").

Case No. 3:25cv627-LC-HTC

Because "[a] prisoner must exhaust each claim that he seeks to present in court," *Arias v. Perez*, 758 F. App'x 878, 881 (11th Cir. 2019), and Rayford failed to grieve his claim against Centurion, that claim is unexhausted and subject to dismissal. *See Henry v. Lutsey*, 2020 WL 3470259, at *3 (E.D. Wisc. June 24, 2020) (grievance alleging correctional officer gave inmate wrong medication did not exhaust claim that defendant imposed a custom or policy of using correctional officers to distribute medication when she knew the policy made inmates sick); *Goldsmith v. White*, 357 F. Supp. 2d 1336 (N.D. Fla. Feb. 28, 2005) (finding inmate's claim of discrimination based on sexual orientation was unexhausted because inmate filed grievances complaining that defendant took his contact lenses but never mentioned that his sexual orientation was the reason for taking the contact lenses).

## III.   Failure to State a Claim

Centurion also argues Rayford has failed to state a claim because he does not sufficiently allege Centurion had a custom or policy of deliberate indifference. The undersigned agrees.[2]

---

[2] While the undersigned concludes Rayford failed to exhaust his claim against Centurion, his failure to state a claim provides an alternative basis for dismissal. In addition, the undersigned notes Rayford's response (Doc. 45) does not address the argument that his allegations fail to state a claim for relief against Centurion under § 1983.

Case No. 3:25cv627-LC-HTC

## A.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*   The Court must liberally construe Rayford's *pro se* allegations, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), but conclusory allegations and legal conclusions couched as factual allegations are not entitled to a presumption of truth.  *Iqbal*, 556 U.S. at 681; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## B.    Deliberate Indifference

The Eighth Amendment prohibits government officials from exhibiting deliberate indifference to the serious medical needs of prisoners. *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024).   "To prevail on a claim of deliberate indifference, plaintiffs 'must satisfy both an objective and a subjective inquiry' and must establish a 'necessary causal link' between the challenged conduct and their injuries."  *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024) (citations omitted).

To satisfy the objective inquiry, an inmate must establish he has an objectively serious medical need—that is, one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). The subjective inquiry requires a plaintiff to demonstrate the defendant exhibited deliberate indifference; to do so, the plaintiff must show the defendant: "(1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness" under criminal law. *Stalley*, 124 F.4th at 1283.

In addition, an entity like Centurion is not vicariously liable for the actions of its employees. *See Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) ("[L]iability under § 1983 may not be based on the doctrine of respondeat superior."). Instead, Centurion is only liable under § 1983 if Rayford shows: (1) his constitutional rights were violated; (2) that Centurion had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.[3] *Grochowski v. Clayton Cnty.*, 961 F.3d 1311, 1321 (11th Cir. 2020) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). "In order for a plaintiff to demonstrate a policy or custom, it is 'generally necessary

---

[3] "When a private entity … contracts … to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent of the municipality." *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997).

to show a persistent and wide-spread practice.'" *McDowell*, 392 F.3d at 1290 (citation omitted).

Here, Rayford claims Centurion displayed deliberate indifference to his medical needs "by creating a cost-saving policy that sanctioned the delay" of tests and treatment for his knee injury. Doc. 15 at 14. To support this claim, Rayford alleges: (1) Nurse Coone prescribed him naproxen in March 2024 and told him "to take only half to save them money"; and (2) Dr. Hernandez-Perez said "it's not in the best interests of company costs for stronger pain medicines or an MRI scan" and "they not gonna pay the money for an MRI." *Id.* at 7-9.

As an initial matter, the undersigned notes prison officials are not categorically precluded from considering costs when determining what treatment to provide inmates. *See Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1276 (11th Cir. 2020) ("It is surely uncontroversial that the deliberate indifference standard does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society.") (cleaned up) (citing *Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997)). Thus, Rayford must establish Centurion had a custom or policy of delaying or denying *medically necessary* care based on costs. However, his allegations are not sufficient to show Centurion had such a custom or policy.

To establish a custom or policy it is ordinarily necessary for a plaintiff to identify a pattern of similar constitutional violations. *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). "A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees[.]" *Id.* at 1311. Here, the second amended complaint alleges only that *Rayford* was denied necessary care by Centurion employees based on cost. Rayford does not identify any other inmate who was denied treatment based on the alleged policy. And the Eleventh Circuit has held a single inmate's experience is not enough to show Centurion had an unconstitutional custom or policy, even when the inmate alleged multiple nurses denied him treatment and one nurse indicated the denial was related to cost. *See Adams v. Todd*, 2024 WL 4449453, at *4-5 (11th Cir. 2024) (finding allegations that two nurses denied inmate treatment for one medical complaint, and one nurse told him the "chief medical officer would not spend any money on getting him surgery," were not sufficient to show Centurion had policy or custom of deliberate indifference); *see also Craig*, 643 F.3d at 1310 ("a custom must be such 'a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it'") (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)).

In addition, Rayford's claim that Centurion had a custom of delaying or denying medically necessary treatment is undermined by his own allegations. He admits he received an MRI in March 2025 and had surgery in July 2025, and he admits surgeries "are regularly performed" at the RMC "by several different doctors." Doc. 15 at 11. Those allegations do not suggest Centurion had a custom which prohibits its employees from scheduling those procedures. Instead, Rayford's allegations and grievances indicate Dr. Hernandez-Perez was the reason he did not receive an MRI sooner. *See* Doc. 15 at 11 (alleging Hernandez-Perez is the RMD and "has directly stated MRI or surgery is not needed"). Accordingly, Rayford's deliberate indifference claim against Centurion should be dismissed.[4]

## IV.   Conclusion

Accordingly, it is RECOMMENDED:

1.     That Defendant Centurion's motion to dismiss (Doc. 29) be GRANTED.

---

[4] Rayford also alleges: (1) Centurion replaced the FDOC's prior medical contractor, Corizon Health, Inc.; (2) Corizon had been "inundated" with lawsuits alleging it refused or delayed treatment to save money; and (3) Centurion "maintained essentially the same employees and … promoted the exact same policies and cost saving practices as its predecessor." Doc. 15 at 9. However, these allegations are not enough to establish a custom or policy. *See Est. of Hand by & through Hand v. Fla. Dep't of Corr.*, 2023 WL 119426, at *6 (11th Cir. 2023) (allegation that Centurion carried over customs or policies from Corizon that the State previously determined to be inadequate failed to show Centurion had a custom or policy that constituted deliberate indifference to inmate's constitutional rights).

2.    That Plaintiff's Eighth Amendment claim against Centurion be

DISMISSED.

At Pensacola, Florida, this 9th day of March, 2026.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON
UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within
**fourteen (14) days** of the date of the Report and Recommendation. <u>Any different
deadline that may appear on the electronic docket is for the court's internal use only
and does not control.</u>  An objecting party must serve a copy of its objections upon
all other parties.  A party who fails to object to the magistrate judge's findings or
recommendations contained in a report and recommendation waives the right to
challenge on appeal the district court's order based on the unobjected-to factual and
legal conclusions. *See* 11th Cir. Rule 3-1.