UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DARREL LEON RAYFORD,

    Plaintiff,

v.                                                                          Case No. 3:25cv627-MW-HTC

CENTURION OF FLORIDA LLC, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Darrel Rayford, a prisoner proceeding *pro se* and *in forma pauperis*, alleges the Defendants violated the Eighth Amendment by displaying deliberate indifference to a right knee injury he suffered while incarcerated. Doc. 15. The individual Defendants filed a motion to dismiss (Doc. 46), but Rayford failed to respond in opposition, despite being given extra time to do so (Doc. 50). Nonetheless, after reviewing the operative complaint, the motion, and the relevant law, the undersigned concludes the motion should be GRANTED in part and DENIED in part. Specifically: (1) Rayford has exhausted his administrative remedies as to the individual Defendants; (2) Rayford has stated deliberate indifference claims against Dr. Hernandez-Perez and Nurse Coone; (3) Rayford has failed to state a claim against Nurse Carter; and (4) Rayford's request for injunctive relief is moot but he may seek punitive damages.

## I.    Background

Rayford sues Centurion of Florida LLC,[1] a contractor that provides medical care to inmates in the Florida Department of Corrections ("FDOC"), and three of its employees, Dr. E. Hernandez-Perez, Nurse Kelley Coone, and Nurse Melanie Carter (collectively, the "individual Defendants").  The second amended complaint (Doc. 15) sets forth the following factual allegations, which are accepted as true for purposes of this Report and Recommendation.

In May 2023, Rayford injured his right knee while playing basketball at Okaloosa Correctional Institution ("Okaloosa CI").  He heard "a pop sound" in the knee, felt "excruciating pain," and was unable to stand with all his weight on the knee.  Security staff immediately escorted Rayford to the medical department for an examination.

Nurse Coone asked Rayford to try to walk; Coone observed Rayford's knee was "extremely swollen" and, based on his behavior and facial expression, saw that he was in "a tremendous amount of pain."  Coone ordered x-rays, which were taken the same day as the injury.  Coone told Rayford she could find nothing abnormal on the x-rays and an MRI would need to be conducted.  About a month after the injury, Coone and Dr. Hernandez-Perez provided Rayford with crutches.

---

[1] The claims against Centurion were dismissed on April 8, 2026.  Docs. 51 & 54.

In August 2023, Rayford was transferred to the Reception and Medical Center ("RMC"), where medical staff informed him that Coone had scheduled him to receive "progressive rehabilitative and physical exercise therapy." Over a span of three months, Rayford was forced, under threat of disciplinary action, to complete twelve sessions of "rigorous and painful multi-training exercises." He could not properly complete the exercises due to pain and because "the tendons which connect his quadriceps muscle to his kneecap was clearly disconnected." Rayford maintains the physical therapy sessions increased his pain and "only made his injury worse."

In December 2023, Rayford was transferred back to Okaloosa CI in more pain than when he suffered the knee injury in May 2023; the chronic pain interfered with his sleep. In March 2024, Nurse Coone prescribed him 500 mg naproxen pills "for the first time for his chronic knee pain" but he "was told to take only half to save them money." At various sick call visits, Rayford complained to Coone that the naproxen did nothing to dull his chronic knee pain. Coone refused to prescribe another, stronger pain medicine "that would work despite having access to stronger medicine." In April 2024, Coone and Dr. Hernandez-Perez provided Rayford a "non-hinged type knee brace."

Sometime after December 2023, Dr. Hernandez-Perez conducted an independent examination of Rayford's knee and reviewed the x-rays that Coone had ordered in May 2023. Hernandez-Perez explained to Rayford that the lateral

collateral ligament ("LCL") in his right knee "was completely torn."  Rayford showed Hernandez-Perez his right knee; he pointed to the top of his kneecap and pressed his finger down, "evidencing no connective tissue present."  Rayford then showed Hernandez-Perez his left knee for comparison, "where the other was obviously connected."

Hernandez-Perez nodded his head in agreement and explained that an LCL tear is a common injury among athletes that causes pain and other symptoms. Rayford asked whether minor LCL tears "usually heal after 3-12 weeks … with general management and treatment involving the use of ice packs, crutches, and … a hinged knee brace."  Hernandez-Perez said "yes."

Rayford looked at both his legs side by side and told Hernandez-Perez the quad muscle in his right leg had "shrunk a lot."  Hernandez-Perez nodded in agreement and explained that it appeared "major surgery … probably would be required to fix it and for [Rayford] to gain full use of his leg," but "he couldn't say for sure without the results of an MRI or ultrasound scan to determine the full extent of the injury."

Rayford immediately requested that those diagnostic tests be performed and that he be prescribed a stronger pain medication to address the constant aching and numbness in his leg.  Rayford also indicated that when he walked, he felt like his leg had "no balance, like it's going to collapse on the injured side."  Hernandez-Perez

refused to prescribe different medication or order an MRI, saying "it's not in the best interests of company costs for stronger pain medicines or an MRI scan."

On October 4, 2024, Hernandez-Perez told Rayford he was going to prescribe a different treatment—therapeutic soles for his shoes and four 10-mg steroid pills a day to help with his knee pain and minimize the swelling. Rayford asked about surgery but Hernandez-Perez said "We gonna do one step at a time." When Rayford asked about an MRI, Hernandez-Perez replied, "they not gonna pay the money for an MRI." Rayford told Hernandez-Perez that Coone said she "put him in for an MRI scan." Hernandez-Perez said, "you're like the 20th person she told that she was gonna do something for and was lying." Rayford asserts the steroid pills did "nothing to dull [his] knee pain or help his knee heal itself properly."

Between March 2024 and September 2024, Rayford filed multiple grievances complaining about the adequacy of his treatment and requesting diagnostic imaging, surgery, and to see a specialist. Some of these grievances were reviewed and responded to by Dr. Hernandez-Perez and Nurse Carter. The responses denied Rayford's grievances and informed him that medical personnel were responsible for determining his treatment regimen.

In February 2025, Rayford was transferred back to the RMC for an MRI "due to multiple sick calls without relief from pain and reduced function of knee." The MRI was taken in March 2025, and Dr. Owens diagnosed Rayford as having a

problem with his meniscus and ordered surgery.  The surgery on Rayford's knee was performed on July 11, 2025.

Based on the foregoing, Rayford alleges the individual Defendants violated the Eighth Amendment by exhibiting deliberate indifference to his right knee injury. As relief, he seeks compensatory and punitive damages, as well as injunctive relief.

## II.   Failure to Exhaust

The individual Defendants argue Rayford's claims should be dismissed because he failed to exhaust his administrative remedies before filing this action.  As stated above, Rayford did not respond to the Defendants' motion.  He did, however, respond to an earlier motion to dismiss filed by Centurion (Doc. 29), which also included a failure to exhaust argument.  Rayford attached grievances he filed to that response, including two sets showing he complained about his medical treatment. Doc. 45.  Although the Defendants attached some of Rayford's grievances to their motion to dismiss (Doc. 46-1), the attachments did not include the grievances described below and Defendants have offered no argument for why those grievances did not exhaust Rayford's deliberate indifference claims against the individual Defendants.  *See Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) ("The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies.").   For the reasons discussed below, the undersigned finds these grievances are sufficient to exhaust Rayford's claims.

## A.    Legal Standard

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion of all available administrative remedies is a mandatory precondition to suit.  *See Booth v. Churner*, 532 U.S. 731, 739 (2001).  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  The requirement is not subject to waiver by a court, or futility or inadequacy exceptions.  *See Booth*, 532 U.S. at 741 n.6; *see also Johnson v. Meadows*, 418 F.3d 1152, 1155 (11th Cir. 2005) (The PLRA "entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'") (citation omitted).  Moreover, the PLRA requires "proper exhaustion" so that the agency has an opportunity to address the issues on the merits.  *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006).

An exhaustion defense under the PLRA is treated as a matter in abatement, which means procedurally the defense is treated like one for lack of jurisdiction, although it is not a jurisdictional matter.  *Turner*, 541 F.3d at 1082 (quotation marks

and citations omitted). "Deciding a motion to dismiss for failure to exhaust proceeds in two steps: first, looking to the defendant's motion and the plaintiff's response, the court assesses whether dismissal is proper even under the plaintiff's version of the facts; and second, if dismissal is inappropriate under the plaintiff's version of the facts, the court makes 'specific findings in order to resolve the disputed factual issues related to exhaustion.' The burden is on the defendant to show a failure to exhaust." *Arias v. Perez*, 758 F. App'x 878, 880 (11th Cir. 2019) (quoting *Turner*, 541 F.3d at 1082).

The grievance procedures promulgated by the FDOC generally require an inmate to complete three steps. First, the inmate must file an informal grievance with a designated prison staff member. Second, the inmate must file a formal grievance with the warden's office. Third, the inmate must submit an appeal to the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). Medical grievances, however, may start with a formal grievance and bypass the informal grievance step. *See* Fla. Admin. Code r. 33-103.006(3)(e).

**B.    Rayford's Grievances**

Rayford provided the Court with two sets of grievances that are relevant to

the exhaustion analysis.[2]    First, on February 23, 2024, Rayford filed a formal grievance complaining he was subjected to "deliberate indifference and medical negligence" by Coone based on her physical therapy referral and her initial assessment of his knee injury, including her failure to see the torn ligaments on the same x-ray that Dr. Hernandez-Perez later reviewed. Doc. 45-1 at 6. Dr. Hernandez-Perez denied that formal grievance on March 12, 2024, stating "it is the responsibility of your Chief Health Officer to determine the appropriate treatment regimen for the condition you are experiencing" and "you have received adequate medical care." Doc. 45-1 at 5. Rayford appealed the denial of the formal grievance to the Secretary on March 19, 2024, asserting Hernandez-Perez's response failed to address the substance of his complaints. Doc. 45-1 at 9. The Secretary's office denied Rayford's appeal on April 16, 2024, reiterating that medical personnel were responsible for determining his treatment regimen, stating Hernandez-Perez's response was appropriate, and noting Rayford received a knee brace on April 4, 2024. Doc. 45-1 at 8.

Second, on July 2, 2024, Rayford filed a formal grievance complaining that he had repeatedly put in sick call requests regarding his knee injury, but medical staff lied about providing him an MRI and kept giving him "the run around" about getting

---

[2] The two sets of grievances discussed herein are the only ones provided to the Court that include an appeal to the Secretary that was responded to on the merits.

his knee fixed. Doc. 45-1 at 12. He added that he had been in pain and telling medical staff about his knee issue for 14 months, but "nothing [was] getting done." *Id.* Dr. Hernandez-Perez denied the formal grievance on August 15, 2024, advising Rayford that: (1) specialty consults are ordered by the Chief Health Officer; (2) his request for an MRI was sent to the Regional Medical Director ("RMD") for review; and (3) after reviewing his medical record, the RMD decided he would continue to use a knee brace for three months and then be reevaluated.[3] Doc. 45-1 at 11. Rayford appealed the denial of the formal grievance on August 25, 2024, asserting Hernandez-Perez's response failed to address the concerns he raised, accusing medical staff of deliberate indifference, and complaining that he had not received an MRI and his knee was still causing him pain. Doc. 45-1 at 15. On October 4, 2024, the Secretary's office denied the appeal, stating Hernandez-Perez's response appropriately addressed the issues Rayford presented. Doc. 45-1 at 14.

### C.    Discussion

The two sets of grievances described above were sufficient to exhaust Rayford's claims against the individual Defendants. The grievances put the FDOC on notice that Rayford believed he was receiving inadequate treatment from medical personnel for his knee injury, and informed prison officials that he was in pain and

---

[3] A stamp on the grievance response indicates Dr. Hernandez-Perez is the RMD referenced in the response. Doc. 45-1 at 11.

wanted an MRI and surgery. *See Harvard v. Inch*, 411 F. Supp. 1220, 1244 (N.D. Fla. 2019) ("[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought") (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). And Rayford completed the grievance process by appealing the denial of his formal grievances to the Secretary's office, which provided a response on the merits. In addition, while the grievances did not always specify the medical personnel Rayford blamed for his inadequate treatment, the grievances "accomplished § 1997e(a)'s purpose by alerting prison officials to the problem and giving them the opportunity to resolve it before being sued." *Parzyck*, 627 F.3d at 1218 ("A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim."). Thus, the undersigned finds under step two of the *Turner* analysis that Rayford's February 23, 2024 and July 2, 2024 formal grievances (and the subsequent appeals) were sufficient to exhaust his deliberate indifference claims against the individual Defendants.

## III. Failure to State a Claim

The individual Defendants also argue Rayford's allegations simply show a disagreement between him and his medical providers regarding his treatment regimen, which is not sufficient to state a claim for deliberate indifference. Even though Rayford did not respond to Defendants' motion, a review of the allegations

in the second amended complaint show that he has stated a claim against Dr. Hernandez-Perez and Nurse Coone, but not Nurse Carter.[4]

### A.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The Court must liberally construe Rayford's *pro se* allegations, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), but conclusory allegations and legal conclusions couched as factual allegations are not entitled to a presumption of truth.  *Iqbal*, 556 U.S. at 681; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### B.    Deliberate Indifference

The Eighth Amendment prohibits government officials from exhibiting deliberate indifference to the serious medical needs of prisoners.  *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024).  "To prevail on a claim of deliberate indifference, plaintiffs 'must satisfy both an objective and a subjective inquiry' and

---

[4] *See Giummo v. Olsen*, 701 F. App'x 922 (11th Cir. 2017) (concluding a district court abused its discretion when it granted a motion to dismiss for failure to state a claim based solely on the plaintiffs' failure to respond to the motion without considering the allegations in the complaint).

must establish a 'necessary causal link' between the challenged conduct and their injuries." *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024) (citations omitted).

To satisfy the objective inquiry, an inmate must establish he has an objectively serious medical need—that is, one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). The subjective inquiry requires a plaintiff to demonstrate the defendant exhibited deliberate indifference; to do so, the plaintiff must show the defendant: "(1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness" under criminal law. *Stalley*, 124 F.4th at 1283.

Here, the Defendants do not argue Rayford's knee injury is not a serious medical need. Thus, only the subjective inquiry is at issue.

### i. Dr. Hernandez-Perez

Rayford's allegations are sufficient to state a deliberate indifference claim against Dr. Hernandez-Perez. After Rayford returned to Okaloosa CI from the RMC, Hernandez-Perez examined him, reviewed the May 2023 x-rays, and diagnosed him as having a torn LCL. During the examination, Hernandez-Perez acknowledged that LCL tears cause "considerable amounts of pain" and stated

surgery would probably be required to fix Rayford's knee and return it to full use, but "he couldn't say for sure without … an MRI or ultrasound scan to determine the full extent of the injury." Doc. 15 at 8. Rayford asked for those diagnostic tests and for a stronger medication to treat his pain, but Hernandez-Perez refused, saying it was not "in the best interests of company costs" and "they not gonna pay the money for an MRI." *Id.* at 8-9.

Accordingly, Hernandez: (1) knew Rayford had a serious medical need that was causing him pain and limiting the use of his leg; (2) knew surgery would likely be required to address that medical need; (3) refused to provide stronger pain medication or order the testing necessary to confirm whether surgery was needed; and (4) based that refusal on cost considerations. These allegations are sufficient to state a claim for deliberate indifference. *See Thomas v. Town of Davie*, 847 F.2d 771, 772-73 (11th Cir. 1988) ("Deliberate indifference to serious medical needs may be shown by failure to provide prompt attention to those needs by delaying necessary medical treatment for nonmedical reasons[.]"); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("Intentional failure to provide service acknowledged to be necessary is the deliberate indifference proscribed by the Constitution.").

Furthermore, while Hernandez-Perez provided Rayford some treatment on October 4, 2024—steroid pills and therapeutic soles for his shoes—that does not

necessarily preclude a finding of deliberate indifference in these circumstances because the allegations indicate he knew: (1) minor LCL tears usually healed within three to twelve weeks; (2) it had been over year since Rayford injured his knee and conservative treatment had not been effective; (3) an MRI was necessary to determine the proper course of treatment; and (4) the failure to order the MRI could lead to ongoing pain and continued loss of leg function. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (deliberate indifference may be established by "a decision to take an easier but less efficacious course of treatment"). Furthermore, when Rayford received the MRI five months later, it confirmed he did require surgery. *See Marlin v. Woods*, 2023 WL 12075316, at *4 (M.D. Ga. July 6, 2023) (concluding it was possible that doctor's "significant delay in getting Plaintiff an MRI rose to the level of deliberate indifference to Plaintiff's serious medical needs" when "the MRI results apparently led to Plaintiff being prescribed a different treatment"). Thus, the motion to dismiss the claim against Hernandez-Perez should be denied.

### ii.    Nurse Coone

Rayford asserts Nurse Coone exhibited deliberate indifference by: (1) misdiagnosing his knee injury after reviewing the x-rays in May 2023; (2) failing to obtain an MRI before scheduling him for physical therapy; and (3) not prescribing him pain medication until March 2024 and providing ineffective pain medication.

Doc. 15 at 14. The undersigned concludes Rayford fails to state a deliberate indifference claim related to Coone's misdiagnosis and failure to obtain an MRI but has stated a claim related to his pain management.

First, Rayford's allegations do not show Coone's failure to properly interpret the May 2023 x-rays was anything more than negligent. And a negligent misdiagnosis is not sufficient to establish deliberate indifference. *See Matthews v. Palte*, 282 F. App'x 770, 771 (11th Cir. 2008) (noting an allegation that psoriasis "was misdiagnosed as spider bites and mistreated with steroid creams does not state a claim of deliberate indifference"); *Simpson v. Holder*, 200 F. App'x 836, 839 (11th Cir. 2006) ("The facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, and poor exercise of medical judgment.").

Likewise, Rayford's allegations do not suggest Coone's failure to obtain an MRI before scheduling physical therapy was anything more than negligent. While Rayford claims Coone told him an MRI "would need to be conducted" after she found nothing abnormal on the x-rays, there are no allegations indicating she knew he would receive inadequate care at the RMC or that failing to obtain an MRI before sending him to the RMC for physical therapy posed a substantial risk of serious harm to him.[5] *See Nam Dang by & through Vina Dang v. Sheriff, Seminole Cnty. Fla.*,

---

[5] Although Rayford also complains about how the physical therapy was conducted and the pain it caused, it took place at RMC and Coone did not oversee it.

871 F.3d 1272, 1282 (11th Cir. 2017) (finding nurse was not deliberately indifferent because even though she misdiagnosed inmate, she admitted him "to the infirmary where he would be seen by both medical and mental health doctors"); *Fann v. Barber*, 2014 WL 5846387, at *7 (S.D. Ala. Nov. 12, 2014) ("Plaintiff's sole allegation of deliberate indifference is based on the fact that he did not receive a M.R.I. scan after Defendant Barber allegedly said she was ordering one for him. This alone will not suffice to support a claim of deliberate indifference."). In addition, Rayford's allegations suggest Dr. Hernandez-Perez, not Coone, was responsible for determining whether he would receive an MRI.

Lastly, Rayford alleges Coone displayed deliberate indifference by not prescribing him pain medication until March 2024, and then by not providing him stronger pain medication. Defendants argue Coone's decisions regarding Rayford's pain medication are matters of medical judgment and not an appropriate basis for imposing liability. However, under these circumstances, the undersigned disagrees.

Rayford alleges Coone failed to provide *any* pain mediation from May 2023 to August 2023, and then from December 2023 until March 2024. Notably, Rayford saw Coone immediately after his injury and showed her the "massive swelling" in his knee and told her he was in "intense pain." When Coone prescribed him naproxen in March 2024, she told him "to take only half to save them money." Rayford continued to complain to Coone "at various sick call visits" that the

naproxen did "nothing to dull his chronic knee pain," but Coone refused to prescribe "another stronger pain medicine that would work despite having access to stronger medicine."

While a decision regarding what type of pain medication to prescribe an inmate will normally not sustain a deliberate indifference claim, Rayford alleges Coone did not provide any medication when he suffered his injury, despite knowing he was in "intense pain." And when she prescribed naproxen eleven months later, she limited the dosage to save money and declined to alter the medication when informed it was ineffective. These allegations plausibly suggest Coone recklessly disregarded Rayford's complaints of pain and are sufficient to state a claim at the motion to dismiss stage.[6] *See McElligott*, 182 F.3d at 1257 ("[P]rison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain.").

### iii. Nurse Carter

Rayford has failed to state a deliberate indifference claim against Nurse Carter. The only allegation regarding Carter is that she responded to an informal grievance Rayford filed about his knee on July 30, 2024. In the grievance, Rayford

---

[6] Many of the cases Defendants cite to support their argument regarding deliberate indifference in the context of pain management were decided on summary judgment, rather than a motion to dismiss. *See e.g., Ross v. Corizon Med. Servs.*, 700 F. App'x 914 (11th Cir. 2017) (affirming grant of summary judgment); *Adams v. Poag*, 61 F.3d 1537 (11th Cir. 1995) (reversing denial of summary judgment); *Brennan v. Headley*, 807 F. App'x 927 (11th Cir. 2020) (reversing grant of summary judgment in part); *Bowen v. Gee*, 2021 WL 597701 (M.D. Fla. Feb. 16, 2021) (granting motion for summary judgment).

complained of pain and how it had been fourteen months since his injury, and he requested "adequate treatment and diagnosis with an MRI and corrective surgery." Doc. 15 at 10.  Carter denied the grievance on July 31, 2024.  She stated Rayford was seen at sick call the previous day and advised him "an email was again sent to the Regional Medical Director requesting an MRI" and "once a decision has been made, he'll be placed on the call out to discuss it." *Id.*; *see also* Doc. 46-1 at 19 (informal grievance and response).

These allegations do not plausibly suggest that Carter subjectively knew her own failure to act posed a substantial risk of serious harm to Rayford or that she responded unreasonably to the grievance.  *See Wade*, 106 F.4th at 1262. Furthermore, Rayford alleges Carter was the Health Services Administrator ("HSA") and "the head of the medical department at Okaloosa CI"; he does not claim Carter personally examined him or was responsible for his treatment.  Also, Carter knew Rayford had been seen by medical personnel at sick call the same day he filed his grievance and a request for an MRI had been submitted to Dr. Hernandez-Perez for his consideration.  Thus, she knew Rayford's complaints and requests were being attended to by other medical professionals.  Because nothing in the second amended complaint suggests Carter's denial of the informal grievance amounted to deliberate

indifference, the claim against her should be dismissed.[7]  *See Brennan v. Headley*, 807 F. App'x 927, 938 (11th Cir. 2020) (finding nurse who served as HSA did not display deliberate indifference to inmate's condition because: (1) "she lacked power to treat [inmate] herself, prescribe him medications, or tell other doctors how to treat" him; (2) she "was only responsible for managing … health-related grievances and handling communications within the prison healthcare system"; and (3) "[s]upervisory and administrative officials such as [her] are 'entitled to rely on medical judgments made by medical professionals responsible for prisoner care'").

### C.    Injunctive Relief and Punitive Damages

Lastly, the Defendants argue Rayford's requests for injunctive relief and punitive damages should be dismissed.  The undersigned agrees the request for injunctive relief should be dismissed but disagrees as to punitive damages.

In the second amended complaint, Rayford asks for injunctive relief in the form of an "MRI or ultrasound and reconstructive surgery to replace and repair shrunken and torn ligaments in [his] right knee."[8]  Doc. 15 at 15.  However,

---

[7] Rayford also sued the individual Defendants in their official capacities.  Doc. 15 at 3-4.  However, those official capacity claims are duplicative of the claim against Centurion, which has already been dismissed.  *See Adams v. Todd*, 2024 WL 4449453, at *4 (11th Cir. Oct. 9, 2024) (noting claims against nurses in their official capacities "are functionally claims against Centurion").  Thus, this case should proceed against Dr. Hernandez-Perez and Nurse Coone in only their individual capacities.

[8] This request for injunctive relief was copied verbatim from Rayford's original complaint, which was filed in May 2025, before he had surgery (Doc. 1 at 12), and the complaint Rayford filed in February 2025 in N.D. Fla. Case No. 3:25cv217-LC-ZCB, before he had an MRI.

Rayford's allegations indicate he received an MRI in March 2025 and had knee surgery in July 2025.  Thus, in the absence of any allegations suggesting injunctive relief is necessary to redress an ongoing constitutional violation, Rayford's request for injunctive relief is moot and should be dismissed.  *See Doe v. Ga. Dep't of Corr.*, 730 F. Supp. 3d 1327, 1338 (N.D. Ga. Apr. 17, 2024) (finding request that defendants provide inmate with an independent evaluation for gender-affirming surgery was moot because defendants "have already done that").

Defendants also argue Rayford's request for punitive damages should be dismissed.  "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).  While Defendants suggest Rayford's allegations do not establish their conduct was sufficiently culpable, courts have previously concluded that defendants who exhibit deliberate indifference may be liable for punitive damages.  *See Christmas v. Corizon Health Servs.*, 2022 WL 5337649 (11th Cir. 2022) (affirming award of punitive damages on deliberate indifference claim); *Moulton v. DeSue*, 966 F. Supp. 2d 1298, 1310 (M.D. Fla. Oct. 16, 2012) (denying motion for summary judgment as to punitive damages in action alleging deliberate indifference).  Thus, Defendants' request to dismiss the claim for punitive damages should be denied.

## IV.   Conclusion

Accordingly, it is RECOMMENDED that:

1.      Defendants Hernandez-Perez, Coone, and Carter's motion to dismiss (Doc. 46) be GRANTED in part and DENIED in part.

2.      Rayford's Eighth Amendment claims against Defendant Carter be DISMISSED.

3.      Rayford's Eighth Amendment claims against Defendant Coone for misdiagnosing his knee injury and failing to obtain an MRI before scheduling him for physical therapy be DISMISSED.

4.      Rayford's request for injunctive relief be DISMISSED as moot.

5.      Defendants Hernandez-Perez and Coone be required to file an answer to the second amended complaint (Doc. 15) within fourteen (14) days.

At Pensacola, Florida, this 15th day of April, 2026.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.